**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**BRYSON CITY DIVISION**
**CIVIL CASE NO. 2:11-cv-00056-MR**

| | | |
|---|---|---|
| **GLENN L. MITCHELL, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Judgment on the Pleadings [Doc. 12] and the Defendant's Motion for

Summary Judgment [Doc. 14].

## I.     PROCEDURAL HISTORY

The Plaintiff Glenn L. Mitchell, Jr. protectively filed applications for a

period of disability, Social Security disability, and Supplemental Security

Income benefits on January 28, 2009, alleging that he had become

disabled as of that date.   [Transcript ("T.") 14, 91-92, 98-101].   The

Plaintiff's applications were denied initially and on reconsideration.  [T. 75,

82].  Upon the Plaintiff's request for a rehearing, a hearing was held before

an Administrative Law Judge ("ALJ") on April 14, 2010.  [T. 27-70].  On May

26, 2010, the ALJ issued a decision denying the Plaintiff benefits. [T. 11-24]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-3]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d

1176, 1179 (4th Cir. 1986) (quoting <u>Perales</u>, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. <u>Hays</u>, 907 F.2d at 1456; <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. <u>Id.</u> Third, if the impairment meets or equals one of the listed impairments of Appendix

1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

## IV.    THE ALJ'S DECISION

On May 26, 2010, the ALJ issued a decision denying the Plaintiff's claim.  [T. 14-24].  Proceeding to the sequential evaluation, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2013, and that he has not engaged in substantial gainful activity since January 28, 2009, the alleged onset date.  [T. 16].  The ALJ then found that the medical evidence established that the Plaintiff's scoliosis and depression were severe impairments.  [T. 16-17].

The ALJ determined that neither of Plaintiff's impairments, either singly or in combination, met or equaled a listing. [T. 17].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the ability to perform a reduced range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: "a need for an opportunity to alternate positions; the ability to occasionally stoop and crouch; must avoid climbing ladders; frequently perform all posturals; avoid concentrated exposure to hazards; and no fast paced work environment." [T. 17]. She then determined that the Plaintiff was unable to perform any of his past relevant work. [T. 22-23]. Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. [T. 23-24]. She therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from January 28, 2009, through the date of her decision. [T. 24].

## V.    DISCUSSION[1]

The Plaintiff asserts the following assignments of error: (1) that the ALJ improperly evaluated the Plaintiff's credibility; (2) that the ALJ

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

improperly evaluated the medical opinions of record; and (3) that the ALJ improperly assessed the Plaintiff's RFC.   [Doc. 13].

## A.    The Credibility Determination

The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) ... which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996) (citations omitted).  If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work."  Id. at 595; see 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

At step two of the credibility determination, an ALJ may consider (1) a claimant's testimony and other statements concerning pain or other subjective complaints; (2) a claimant's medical history and laboratory findings; (3) objective medical evidence; (4) and any other evidence relevant to the severity of the impairment.  SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  Such other relevant evidence may include a claimant's activities of daily living; the location, duration, frequency and intensity of his pain or symptoms;

precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medications; and any other measures used to relieve pain.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In the present case, the ALJ properly evaluated the Plaintiff's subjective complaints.  After citing the correct legal standard, the ALJ discussed the Plaintiff's hearing testimony, including his statements regarding the location of his pain, his functional restrictions, his activities of daily living, and the means he used to relieve his pain.  [T. 17-18].  The ALJ also considered the objective evidence in the record.  [T. 18-22].  After considering all of the evidence in the record, the ALJ concluded that while the Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent that they were inconsistent with his RFC.  [T. 17, 22]. In reaching that finding, the ALJ determined that the Plaintiff's statements concerning his impairments and their impact on his ability to work were only partially credible based on his reports regarding his daily activities and functional restrictions.  [T. 19]. The ALJ went on to conclude that the exaggerated nature of the Plaintiff's statements called into question the general reliability of his allegations concerning his symptoms and functional

limitations. [Id.]. The ALJ further noted that the Plaintiff's admitted activities of daily living, as well as the objective medical evidence of record, were substantially more consistent with an individual able to sustain competitive work activity than with an incapacitated individual. [Id.].

The Plaintiff contends that the ALJ's credibility finding was based on a mischaracterization of the evidence in the record. [Doc. 13 at 10]. Specifically, the Plaintiff claims that there was no inconsistency between his statements in the Disability Report regarding his ability to lift or carry and his hearing testimony. [Id. at 10-11]. He further argues that the ALJ erred when she found that his testimony that he could not maintain a normal eight-hour workday was inconsistent with his described daily activities. [Doc. 13 at 11]. While the Commissioner concedes that the statement made by the Plaintiff in the Disability Report [T. 118] that he could no longer lift "like [he] used to" due to his back problems was not necessarily inconsistent with his hearing testimony [T. 41, 55], the Commissioner argues that that there is nevertheless substantial evidence to support the ALJ's credibility determination. [Doc. 15 at 4-5].

While the Plaintiff claimed that he could not sustain an eight-hour workday, the ALJ found that this statement was contradicted by the fact that the Plaintiff had the ability to perform a wide-range of household

chores, including mopping, sweeping, dusting, doing laundry, and washing dishes. [T. 19]. This finding is consistent with the Plaintiff's hearing testimony that he attended church when he had transportation; that he saw his mother daily; that he did his own cooking and laundry; that he washed his pots and pans; and that he vacuumed, mopped, and swept the floors. [T. 37, 44]. Such activities of daily living are inconsistent with his complaints of debilitating pain and inability to perform basic physical and mental work abilities. See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).

The Plaintiff argues that the ALJ incorrectly equated the ability to perform household chores with the ability to engage in sustained full-time work. [Doc. 13 at 12]. Contrary to the Plaintiff's assertion, however, the ALJ never found that the ability to perform household chores was equivalent to the ability to work on a full-time basis; rather, the ALJ evaluated the credibility of the Plaintiff's allegation that he could not maintain an eight-hour day in light of his reported activities of daily living. The ALJ's consideration of Plaintiff's daily activities in this regard was entirely proper, as such activities may be taken into account when determining the intensity, persistence, and limiting effect of a claimant's

symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); SSR 96-7p, 1996 WL 374186, at *3.

The Plaintiff further contends that the ALJ improperly discounted his credibility because his treatment record was less than what would be expected for someone with debilitating symptoms.  [Doc. 13 at 12].  He specifically argues that it was improper for the ALJ to consider the Plaintiff's lack of medical treatment as part of her credibility analysis, as he did not have the money or insurance to obtain medical care.  [Id. at 14].

An ALJ can properly find that the claimant lacked credibility when his alleged level of pain is not commensurate with the treatment he sought out or received.  See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("an unexplained inconsistency between the claimant's characterization of the severity of [his] condition and the treatment [he] sought to alleviate that condition is highly probative of the claimant's credibility"); SSR 96-7p, 1996 WL 374186, at *7 ("[An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.").  An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue

regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p, 1996 WL 374186, at *7. The claimant's inability to afford medical treatment may constitute a sufficient reason for failing to seek such treatment. Viverette v. Astrue, No. 5:07-CV-395-FL, 2008 WL 5087419, at *9 (E.D.N.C. Nov. 24, 2008).

In the present case, the Plaintiff has failed to establish that he was unable to obtain medical care due to his financial condition. In fact, the record establishes that during the relevant time period, the Plaintiff was able to obtain treatment from Family Mental Health [T. 188-201, 237-66, 294-98], Smokey Mountain Counseling Center [T. 289-93] and Medlink [T. 299-301]. Accordingly, the ALJ did not err in considering the Plaintiff's lack of treatment history in evaluating his subjective complaints.

Ultimately, the ALJ is responsible for making credibility determinations and resolving conflicts in the evidence. Hays, 907 F.2d at 1456. An ALJ is accorded deference as to determinations of a claimant's credibility. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these

questions are to be given great weight." Id. The ALJ's assessment of the Plaintiff's credibility was fully explained and is supported by substantial evidence. The Plaintiff's first assignment of error, then, is without merit.

## B. Evaluation of Medical Opinions

In evaluating and weighing medical opinions, the ALJ considers: "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson, 434 F.3d at 654; see also 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ, however, will give a treating source's opinion "controlling weight" where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). As the Fourth Circuit has explained:

> [B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence.

Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citations and internal quotation marks omitted).

In addition, the ALJ must provide a good reason in the notice of the determination or decision for the weight he or she gives a claimant's treating source opinions. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Social Security Ruling 96–2p specifically provides that:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

The Plaintiff first argues that the ALJ failed to consider or weigh Dr. Johnston's statement [T. 204] that the Plaintiff "probably does have a great deal of pain and loss of stamina due to his back condition." [Doc. 13 at 15]. The doctor's statement, however, does not constitute a medical opinion. Medical opinions are defined by the regulations as "statements from physicians or psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s) and [his or her] physical or mental

restrictions." 20 C.F.R. §§ 404.1527(a)(2). 416.927(a)(2). Dr. Johnston's statement does not reflect his judgment about the severity of the Plaintiff's impairment or his physical restrictions, and thus, the ALJ was under no obligation to evaluate this "opinion" pursuant to 20 C.F.R. §§ 404.1527(c), 416.927(c). In any event, the ALJ acknowledged that the Plaintiff experienced some degree of pain and included limitations in his RFC due to his back condition. [T. 19, 20]. Because the ALJ considered Dr. Johnston's report and accounted for Plaintiff's pain and loss of function, there was no error in her evaluation of this evidence.

The Plaintiff next argues that the ALJ erred in assessing the opinions of Dr. Zeisz, the psychological consultative examiner, and the state agency physicians. [Doc. 13 at 16]. Specifically, the Plaintiff argues that the ALJ improperly determined the Plaintiff's RFC and *then* evaluated the medical opinions in the record based on what "she had already determined were [his] functional abilities and limitations." [Doc. 13 at 16].

The District Court for the District of Massachusetts recently addressed a similar argument, stating as follows:

> At first glance, the contention [that the ALJ engaged in circular reasoning] appears to hold weight, but a review of the remainder of the [ALJ's] residual functional capacity analysis indicates that the [ALJ] did weigh [the claimant's] testimony prior to reaching his conclusion. He did not discredit [the

> claimant's] testimony *because* it was inconsistent with his residual functional capacity assessment. Rather, he explained that he was rejecting it *to the extent* it was inconsistent with his assessment and then went on to explain *why* he was rejecting it.

Amaral v. Comm'r of Soc. Sec., 797 F.Supp.2d 154, 161 (D. Mass. 2010) (quoting Barry v. Astrue, No. CV-09-1677-PHX-NVW, 2010 WL 3168630, at *10 (D. Ariz. Aug. 10, 2010)). The reasoning of Amaral is equally applicable here. In her decision, the ALJ first noted her conclusion regarding the Plaintiff's RFC before fully discussing the evidence that led to and supported this conclusion. [See T. 17-22]. Thus, the ALJ did not, as argued by the Plaintiff, credit or discredit the doctors' opinions because they were inconsistent with the RFC finding, but rather, followed the assessments to the extent that they were consistent with the RFC finding and then explained the basis for her determination.

The Plaintiff also maintains that the ALJ failed to state the weight to which Dr. Zeisz's and the state agency physicians' opinions were entitled. [Doc. 13 at 17]. Contrary to the Plaintiff's argument, however, the ALJ in fact stated that she gave these opinions significant weight, and provided the rationale for that determination. [T. 19, 21-22]. Further, a review of the hearing transcript and decision reveals that the ALJ followed the doctors' opinions, as the ALJ's RFC determination was consistent with Dr. Woods'

and Dr. Zeisz's opinions [T. 17, 207-08, 210, 218], and the ALJ's hypothetical question and the vocational expert's responses were consistent with the state agency physicians' assessment that the Plaintiff was limited to unskilled work [T. 24, 67-68, 235, 287].

The Plaintiff further argues that the ALJ failed to explain certain discrepancies between the medical opinions in the record and the ALJ's RFC finding.  First, the Plaintiff argues that while the state agency physician, Dr. Woods, relied upon the examination findings of the consultative examiner, Dr. Johnston, the state agency physician ignored Dr. Johnston's identification of severe back pain and loss of stamina.  [Doc. 13 at 17].  Contrary to the Plaintiff's argument, there is no indication in Dr. Woods' report that he relied solely upon the findings of Dr. Johnston. Rather, Dr. Woods considered the entire record available to him, including the record of the Plaintiff's prior treatment for scoliosis and the reports of his daily living activities.  [T. 213].  The Plaintiff then argues that Dr. Woods' opinion is inconsistent with the finding of joint pain and stiffness identified in the records from Medlink Georgia [T. 300], as well as the Plaintiff's own hearing testimony.  An assessment that Plaintiff could perform a range of light work, however, is not contradicted by a report from the Plaintiff that he had joint pain and stiffness on one occasion, and his hearing testimony was

found to be only partially credible. The Plaintiff further contends that the limitation included in the RFC determination requiring an opportunity to alternate positions is inconsistent with Dr. Woods' opinion and is not explained. [Doc. 13 at 17]. The ALJ's RFC determination is not based solely upon Dr. Woods' opinion, however, but rather all of the evidence in the record. The inclusion of a limitation in addition to those found by Dr. Woods therefore does not demonstrate any error on the part of the ALJ.

Plaintiff next contends that the ALJ failed to explain the inconsistencies between the RFC and consultative examiner Zeisz's opinions, including that it would be difficult for the Plaintiff to cope with demands in some work situations and that he may be able to function for part-time work in the future once his psychiatric and physical functioning is stabilized. [Doc. 13 at 17-18]. Dr. Zeisz, though, never found that the Plaintiff was disabled or more limited than the ALJ. Dr. Zeisz concluded that the Plaintiff would have difficulty coping with the demands of some (but not all) work situations, and he should not be in fast-paced environments [T. 218], findings that are consistent with the ALJ's RFC and hypothetical limitations posed to the vocational expert [T. 17, 67-68]. Moreover, while Dr. Zeisz determined that the Plaintiff could function adequately in at least

part-time work, the doctor did not issue any prohibition against engaging in full-time work. [See T. 218].

The Plaintiff further argues that the ALJ's RFC failed to either consider the limitations from the state agency physicians' mental RFC assessments [T. 235, 287] or explain the inconsistencies between their opinions and her RFC determination. [Doc. 13 at 18]. Contrary to the Plaintiff's argument, however, the ALJ considered the state agency physicians' opinions of Plaintiff's mental functioning and included their assessment that the Plaintiff was limited to unskilled work in the hypothetical question to the vocational expert. [T. 21-22, 67-68]. As such, there was no inconsistency between the state agency physicians' opinions and the ALJ's ultimate RFC determination.

## C.    The RFC Assessment

### 1.    Plaintiff's Physical Limitations

The Plaintiff argues that in determining the Plaintiff's RFC, the ALJ mischaracterized some of the medical evidence and completely ignored other medical findings. [Doc. 13 at 12]. In making this argument, the Plaintiff notes that while the ALJ found that the Plaintiff could sweep and vacuum, she failed to consider that the Plaintiff had reported that he could perform these tasks only for short periods and often needed to change

positions. [Id.]. There is no material inconsistency between the Plaintiff's report and the ALJ's findings. As for the other medical findings which the Plaintiff complains that the ALJ ignored [Doc. 13 at 12], the Court finds no reversible error. The ALJ's decision reflects that she conducted a thorough review of the evidence before her. The failure to discuss every specific piece of evidence "does not establish that [she] failed to consider it." Elias v. Astrue, No. 3:07-CV-43, 2008 WL 191662, at *21 (N.D.W.Va. Jan. 22, 2008).

The Plaintiff also argues that the ALJ mischaracterized his therapist records from July and August 2009 by noting that the Plaintiff had reported a reduced depressed state, without mentioning (1) that he also reported still having to "fight" depression intermittently and (2) that as of August 2009, the Plaintiff was found to have made only minimal progress. [Doc. 13 at 12-13]. The ALJ, however, did not err in her characterization of these records. The Plaintiff reported on July 16, 2009 and July 30, 2009, that his depression had decreased [T. 297-98], and on August 13, 2009, that his depression was a little better [T. 296]. Thus, the ALJ's finding that the Plaintiff had reported a reduced depressed state during this time period was entirely accurate.

The Plaintiff contends that the ALJ had a duty to develop and analyze arguments both for and against granting him benefits, but that despite this duty, the ALJ ignored evidence that substantiated his claim. [Doc. 13 at 13]. The Plaintiff overstates the ALJ's duty. The Fourth Circuit has held that an ALJ has the duty to "explore all relevant facts and inquire into the issues necessary for adequate development of the record." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), The ALJ is not required, however, "to function as the claimant's substitute counsel." Bell v. Chater, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. June 9, 1995) (quoting Clark v. Shalala, 28 F.3d 828, 831-831 (8th Cir. 1994)). Here, the Plaintiff has not shown that the ALJ failed to develop the record fully. First, while the Plaintiff argues that the ALJ ignored Dr. Johnston's findings, the ALJ acknowledged the doctor's ultimate diagnoses in the hearing decision and included specific limitations to Plaintiff's RFC based on such findings. [T. 20]. With respect to Dr. Johnston's statement that the Plaintiff probably has a great deal of pain and loss of stamina, as noted above, this statement was not a medical opinion, and the ALJ did not commit reversible error by failing to make explicit mention of such statement in her decision.

The Plaintiff next argues that the ALJ ignored his Global Assessment of Functioning ("GAF") scores, and that such evidence corroborates his

assertion that he had serious symptoms. [Doc. 10 at 13-14]. The failure to reference a GAF score is not, standing alone, however, a sufficient ground to reverse a disability determination. Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). "This is particularly true . . . where the ALJ fully evaluated the records and treatment notes upon which the GAF scores were based." Love v. Astrue, No. 3:11CV14-FDW-DSC, 2011 WL 4899989, at *4 (W.D.N.C. Sep. 6, 2011). Here, the ALJ conducted a full and thorough review of the Plaintiff's mental health records which included his GAF scores. Thus, the ALJ's failure to make an explicit finding regarding such scores does not amount to reversible error.

## 2.    Plaintiff's Mental Limitations

The Plaintiff argues that the ALJ failed to complete the full mental RFC assessment, as she merely conducted the evaluation required by 20 C.F.R. §§ 404.1520a and 416.902a, but failed to perform the analysis required for steps four and five of the sequential evaluation process. [Doc. 13 at 18-19].

The ALJ properly evaluated the Plaintiff's mental functioning. After conducting the analysis required by 20 C.F.R. §§ 404.1520a and 416.920a, the ALJ determined that due to the Plaintiff's depression, he was functionally limited to a reduced range of light work that did not require a

fast-paced work environment.  [T. 22].  The state agency physicians'
assessments that the Plaintiff was limited to unskilled work [T. 235, 287]
provide substantial evidence for this finding.

The Plaintiff further argues that the ALJ's evaluation of his mental
functioning was flawed, as the ALJ failed to include the moderate
limitations from the state agency physicians' assessments in the RFC
finding.  [Doc. 13 at 20].  The Plaintiff's contention must fail.  The moderate
limitations identified in the state agency physicians' opinions were not part
of their mental RFC assessments.  As discussed above, these doctors
found in their RFC assessments that the Plaintiff was limited to unskilled
work; the ALJ included that restriction in her hypothetical question to the
vocational expert; and the identified jobs were consistent with that
limitation.  Accordingly, the ALJ properly considered the state agency
physicians' conclusions regarding the Plaintiff's functioning, and considered
how the Plaintiff's impairments impacted his concentration, persistence,
and pace in determining his RFC.

## VI.   CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied
the correct legal standards, and that there is substantial evidence to

support the ALJ's finding of no disability from the date of onset through the date of her decision.

### O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 14] is **GRANTED**; and the Commissioner's decision is hereby **AFFIRMED**.  This case is hereby **DISMISSED WITH PREJUDICE.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: February 25, 2013

Martin Reidinger
United States District Judge